**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FRED BERNACCHI, individually and on behalf of all others similarly situated, | Case No.: 1:26-cv-3602 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| DEL-TRIO LIMITED and CAPUTO'S NEW FARM PRODUCE, INC. d/b/a ANGELO CAPUTO'S FRESH MARKETS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Fred Bernacchi ("Plaintiff"), by and through his attorneys, makes the following allegations against Defendant Del-Trio Limited ("Del-Trio") and Caputo's New Farm Produce, Inc. doing business as Angelo Caputo's Fresh Markets ("Caputo's")(collectively, "Defendants") pursuant to the investigations of his counsel and upon information and belief, except as to the allegations specifically pertaining to himself or his counsel, which are based upon personal knowledge.

**INTRODUCTION**

1.      This is a class action on behalf of purchasers of Grigoris Lefas "Extra Virgin Olive Oil" (the "Product") in the United States.

2.      Defendants market, label, advertise, and sell the Product to consumers with packaging that prominently and unequivocally represents that the oil is "Extra Virgin Olive Oil" (the "Representation").

3.      Reasonable consumers believe, based on Defendants' Representation, that the Product is olive oil. However, independent laboratory testing has shown that the Product is almost entirely composed of rapeseed oil.

4.      Rapeseed oil, more commonly known as canola oil in the United States, is a highly processed oil and considered to be lower quality than extra virgin olive oil. More importantly, rapeseed oil is sold at far lower prices than extra virgin olive oil, including the Product. The following table shows the price differences between the Product, olive oils, and canola oils sold at the Caputo's store where Plaintiff purchased the Product:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| **Grigoris Lefas Extra Virgin Olive Oil[1]** | **101 fl. oz.** | **$31.49** | **$0.31 per fl. oz.** |
| Bertolli Extra Virgin Olive Oil[2] | 50.72 fl. oz. | $25.89 | $0.51 per fl. oz. |
| La Bella Romana 100% Pure Olive Oil[3] | 101 fl. oz. | $31.49 | $0.31 per fl. oz. |
| Mazola Canola Oil[4] | 128 fl. oz. | $20.69 | $.16 per fl. oz. |
| Best Choice Canola Oil[5] | 128 fl. oz | $13.89 | $.11 fl. oz. |

5.      Calling a product "olive oil" when it contains any other non-olive oil is barred by an array of olive oil-making conventions, standard industry practices, international regulations, and federal laws. According to several authorities, a product containing more than a negligible

[1] https://shop.shopcaputos.com/search?item=grigoris%20lefas.

[2] https://shop.shopcaputos.com/search?item=extra%20virgin%20olive%20oil.

[3] https://shop.shopcaputos.com/search?item=olive%20oil.

[4]https://shop.shopcaputos.com/search?item=canola%20oil.

[5] https://shop.shopcaputos.com/search?item=canola%20oil.

amount of other oils must contain a prominent disclosure of that fact on the label. Defendants do not disclose their use of rapeseed oil and instead mislead purchasers as to the very nature of their product by, among other things, disguising rapeseed oil as "Extra Virgin Olive Oil."

6. No reasonable consumer would purchase a product labeled as olive oil when it is in fact rapeseed oil.

7. Defendants' misbranding is intentional. Any reasonable quality-control check would detect the presence of rapeseed oil. A packer or distributor of olive oils therefore does not unwittingly mislabel rapeseed oil as olive oil.

8. The mislabeling of the Product renders it completely worthless. By mislabeling the Product, Defendants dupe consumers into purchasing something that is *not* olive oil. Nevertheless, the Product is labeled and sold as premium olive oil, and it commands a substantial price premium over rapeseed oil.

9. Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Product during the statute of limitations period, for violation of Illinois' Consumer Fraud and Deceptive Business Practices Act §§ 815 ILCS 505/1, *et seq.*, breach of express warranty, and fraud.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

11. This Court has personal jurisdiction over Defendant Del-Trio. Defendant Del-Trio purposefully avails itself of the Illinois consumer market and distributes Grigoris Lefas throughout the State of Illinois and the United States, where the Product is purchased by

3

countless consumers, including Plaintiff, every day. These purposeful contacts with Illinois give rise to the present cause of action.

12. This Court has general personal jurisdiction over Defendant Caputo's because its principal place of business is in Illinois and is thus at home in Illinois.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in this District.

**PARTIES**

14. Plaintiff Fred Bernacchi is an individual consumer who, at all times material hereto, was a citizen of Batavia, Illinois. Mr. Bernacchi purchased the Product in or around September 2025 from a Caputo's store in South Elgin, Illinois. Plaintiff paid approximately $30 for the Product. Plaintiff saw and relied on Defendants' Representation in making his purchase. Plaintiff reasonably believed, based on the Representation, that he was purchasing unadulterated virgin olive oil, and this belief was a material part of his decision to purchase the Product. Had Plaintiff known that the Product was adulterated with rapeseed oil and was not extra virgin olive oil, he would not have purchased it, or he would have paid less for it. Thus, Plaintiff has suffered an injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as alleged herein.

15. An independent laboratory has conducted testing on the tin of the Product purchased by Plaintiff and has confirmed that the purported olive oil in the tin was adulterated with rapeseed oil.

16. Defendant Del-Trio Limited is a United Kingdom private limited company with its principal place of business in London, United Kingdom. Defendant Del-Trio manufactures and distributes the Product throughout the United States and the State of Illinois.

17.     Defendant Caputo's New Farm Produce, Inc. is an Illinois Corporation with its principal place of business in Carol Stream, Illinois. Defendant Caputo's markets, distributes, and sells the Product throughout the State of Illinois.

18.     Each of the Defendants acted jointly to perpetuate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

**FACTUAL ALLEGATIONS**

**A.      No Law, Regulation, Or Standard Permits Adulterated Oil to be Labeled as Olive Oil**

19.     Virgin olive oil is defined as "oils which are obtained from the fruit of the olive tree (*Olea europaea L.*) solely by mechanical or other physical means under conditions, particularly thermal conditions, that do not lead to alterations in the oil, and which have not undergone any treatment other than washing, decantation, centrifugation and filtration."[6]

20.     Despite vigilant policing by responsible industry members, the cost disparities between olive oil and other vegetable oils nevertheless create a financial incentive for fraudsters to adulterate olive oils with cheaper oils (such as rapeseed oil) and disguise it as olive oil.

21.     Various federal and international bodies have promulgated standards to guard against deceptive mislabeling, including standards to distinguish olive oil from other seed oils. Relevant here are two regulatory bodies: the USDA and the International Olive Council ("IOC"). They have adopted standards that reflect the longstanding industry practices that underlie relevant consumer expectations.

---

[6] International Olive Council, Trade Standard Applying to Olive Oils and Olive-Pomace Oils, COI/T.15/NCNo.3/Rev 21 at 2.1.1 (July 2025). (the "IOC Trade Standards").

22. The USDA has promulgated the following definition for classifying olive-derived oils:

> Virgin olive oils are the oils obtained from the fruit of the olive tree solely by mechanical or other physical means under conditions, including thermal conditions, that do not lead to alterations in the oil, and which have not undergone any treatment other than washing, decantation, centrifugation, and filtration … No additives of any kind are permitted.

75 Fed. Reg. 22363 (Apr. 28, 2010)

23. The IOC promulgates world-recognized standards used to determine the quality and purity of olive oils. The IOC actively monitors and seeks to prevent olive oil fraud throughout its member countries. In addition, the IOC has certified a small number of laboratories around the world that meet rigorous guidelines for performing chemical and sensory tests of olive oils. Under IOC standards, no one can label olive oil mixed with rapeseed oil as olive oil.[7]

**B.     Laboratory Testing Confirms the Product Is Not Olive Oil, Let Alone Extra Virgin Olive Oil**

24. In January 2026, the Product purchased by Plaintiff was blinded and shipped to the Lluis Jané Busquets Labratori d'Anàlisi S.L, an IOC-recognized laboratory located in Sant Quirze del Vallès, Spain. The results are attached as Exhibit A.

25. Based on a number of separate objective chemical criteria, this sample of "Extra Virgin Olive Oil" was revealed to be rapeseed oil. As such, the Product cannot properly be labeled, represented, or commonly understood to be olive oil.

26. On several criteria, the sample did not meet the established thresholds by a large margin. In fact, these results indicate that the oil is almost entirely rapeseed oil.

---

[7] IOC Trade Standards 2.1

6

| Parameter | IOC Limit for Olive Oil[8] | Plaintiff's Grigoris Lefas Sample |
|---|---|---|
| **Brassicasterol** | <=0.1 | 8.2 |
| **Campesterol** | <=4.0 | 32.1 |
| **Linolenic Acid** | <=1.00 | 5.88 |
| **Stigmasta-3,5-diene** | <=0.05 | 165.7 |

27.     High levels of sterols such as Brassicasterol and Campesterol are not found in virgin olive oil and indicate adulteration under both IOC and USDA standards.[9] Stigmasta-3,5-diene is another sterol that is produced during the refining process, mainly during bleaching and deodorizing steps. Such refining steps are not used in producing pure olive oil and thus the presence of stigmasta-3,5-diene is used to detect the presence of refined vegetable oils in virgin olive oil "since refined oils contain stigmastadienes and virgin oils do not."[10]

28.     These results cannot be blamed on merely poor-quality olive oil or the handling and storage of the particular tin purchased by Plaintiff. These results simply could not have occurred if these lots of ostensibly "Extra Virgin Olive Oil" contained only oils extracted from olives. In other words, these markers do not appear by happenstance and clearly indicate that the oil is almost entirely rapeseed oil.

---

[8] IOC Trade Standards 3.

[9] *Id* at 3.3.1; United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 Fed. Reg. 22363 (Apr. 28, 2010); *see also* Detection of olive oils authenticity by determination of their sterol content using LC/GC, Bohačenko, I; Kopicová, Z. *Czech Journal of Food Sciences*, Vol. 19, Iss. 3 p.97-103, (Feb 7, 2013): p. 97-103.

[10] International Olive Council, Determination Of Stigmastadienes In Vegetable Oils, COI/T.20/Doc. No 11/Rev. 4 (June 2021).

7

**C.      Defendants' False and Deceptive Labeling**

29.      The Product is generally sold in 3-liter tins. On all containers, the front and back label represents that the Product contains extra virgin olive oil. This text appears in large, red letters. A photo of the tin that Plaintiff purchased is below:



30.      As can be seen from the above image, the Product's Representations conveys the unequivocal message that the Product is olive oil.

8

31. This message is further reinforced by the side label which makes the same Representation:



32. The labels do not disclose anywhere that the Product is adulterated with rapeseed oil. Thus, consumers reasonably believe the Product is unadulterated olive oil.

33. As discussed above, based on Plaintiff's investigation and testing, the Product is not olive oil and is in fact adulterated with rapeseed oil. Thus, the claim is false and misleading.

**D.    Defendants' Representation Is Material**

34. Defendants' Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Product.

9

35.     Olive oil is well-known to be one of the healthiest cooking oils and is extremely popular in the United States due in substantial part because it is minimally processed, especially virgin olive oils.

36.     Regardless of whether consumers believe olive oil is superior to rapeseed oil, the issue of whether the olive oil is pure or is adulterated is material to reasonable consumers. For example, consumers may be allergic to, or have other reasons for not consuming, rapeseed oil. Consumers of the Product reasonably expect to know what type of oil they are consuming.

37.     Consumers purchased, and continue to purchase, the Product in part because Defendants' Representation conveys the unequivocal message that it is olive oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased them at all, if not for this Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Product commands in the market as a result of Defendants' Representation.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

### Nationwide Class

All natural persons who purchased the Product in the United States within the applicable statute of limitations period.

### Illinois Subclass

All natural persons who purchased the Product in the State of Illinois within the applicable statute of limitations period.

39.     Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

40.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

41.     Plaintiff is a member of both classes.

42.     <u>Numerosity</u>: The proposed Classes are so numerous that joinder of all members would be impractical. The Product is sold throughout the United States and the State of Illinois. The number of individuals who purchased the Product during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

43.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

(a)     Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Product;

(b)     Whether Defendants' use of the challenged packaging, constituted false or deceptive advertising;

(c)     Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

(d)     Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

(e) Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

(f) Whether Plaintiff and the Classes are entitled to statutory damages, and if so, in what amount; and

(g) Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

44. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive packaging and advertising of the Product. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as the packaging of the Product: (a) bears the same material false Representation and (b) the Product does not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

45. Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

46. Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

47. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

48. Defendants have also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## CLAIMS FOR RELIEF

## COUNT I

**Violation Of Illinois Consumer Fraud and Deceptive Business Practices Act,** §§ **815 ILCS 505/1,** *et seq*
(*For the Illinois Subclass*)

49. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendants.

51. Plaintiff and other Illinois Subclass Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

52. Defendants are persons within the context of the ICFA, 815 ILCS 505/1(c).

53. At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

54. Plaintiff and the proposed Illinois Subclass are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

55. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or

practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

56.     Plaintiff and the other Illinois Subclass Members reasonably relied upon Defendants' Representation that the Product was extra virgin olive oil. Plaintiff read and relied on the labeling to conclude that the Product was not adulterated with rapeseed oil.

57.     Defendants' conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq.*

58.     Defendants engaged in deceptive conduct, including but not limited to misrepresenting that the Product was olive oil, and failing to disclose that the Product was adulterated with rapeseed oil.

59.     Defendants violated the ICFA by representing that the Product has characteristics or benefits that it does not have. 815 ILCS § 505/2; 815 ILCS § 510/2(5).

60.     Defendants advertised the Product with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

61.     Defendants engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

62.     Prior to placing the Product into the stream of commerce and into the hands of consumers, Defendants knew or should have known that the Product was adulterated, but Defendants not only failed to properly test and quality-check the Product, but further misrepresented, omitted, and concealed this fact to consumers, including Plaintiff and Illinois

14

Subclass Members, by not listing the rapeseed oil contained in the Product on the Product's labels.

63.     Defendants intended that Plaintiff and each of the other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Product.

64.     Plaintiff and reasonable consumers trusted and relied on Defendants' representations and omissions regarding the purity of the olive oil.

65.     Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass Members to be deceived about the true nature of the Product.

66.     Plaintiff and Illinois Subclass Members have been damaged as a proximate result of Defendants' unfair and deceptive violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Product.

67.     As a direct and proximate result of Defendants' violations of the ICFA, as set forth above, Plaintiff and the Illinois Subclass Members have suffered ascertainable losses of money caused by Defendants' unfair conduct of selling adulterated, misbranded, and illegally sold products, and their misrepresentations and material omissions regarding the presence of rapeseed oil in the Product.

68.     Had they been aware of the true nature of the Products, Plaintiff and the Illinois Subclass Members either would have paid less for the Product or would not have purchased it at all.

69.     Based on Defendants' unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees, under 815 ILCS 505/10a.

## COUNT II

### Breach of Express Warranty
(*For all Classes*)

70. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

71. Plaintiff brings this claim individually and on behalf of members of the Class and Illinois Subclass against Defendants.

72. In connection with the sale of the Product, Defendants issued written warranties. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that the Product was olive oil.

73. Defendants' express warranties and their affirmations of fact and promises made to Plaintiff and the Class regarding the Product became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

74. The Product does not conform to the express warranties because it is adulterated with rapeseed oil and thus cannot be labeled as olive oil.

75. Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased the Product if they had known the truth about the Product's adulteration ; (b) they paid a price premium for the Product based on Defendants' express warranties; and (c) the Product did not have the characteristics, uses, or benefits as promised.

76. As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as sold.

77. On March 13, 2026, Plaintiff sent a notice letter to Defendant Del-Trio consistent with U.C.C. 2-607(3)(A). The letter was sent on behalf of Plaintiff and all other persons similarly situated.

78. On March 20, 2026, Plaintiff sent a notice letter to Defendant Caputo's consistent with U.C.C. 2-607(3)(A). The letter was sent on behalf of Plaintiff and all other persons similarly situated.

## COUNT III
### Fraud
### (*For all Classes*)

79. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

80. Plaintiff brings this claim individually and on behalf of members of the Class and Illinois Subclass against Defendant Del-Trio.

81. Defendant affirmatively misrepresented to consumers that the Product was olive oil despite the fact the Product was adulterated with rapeseed oil.

82. Defendant's misrepresentations are material to a reasonable consumer because it relates to the quality, safety, utility, and healthfulness of the Product. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to oil that is consumed.

83. At all relevant times, Defendant knew that the representations were misleading. Defendant intended for Plaintiff and other consumers to rely on the representations, as evidenced by Defendant intentionally and conspicuously placing it on the packaging of the Product. In the alternative, Defendant acted recklessly in making the representations without regard to the truth.

84. Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Product, and had the

correct facts been known, would not have purchased it at the prices at which it was sold in the market, or would not have purchased it at all.

85.     Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the price premium for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the proposed Classes, respectfully seek judgment against Defendants as follows:

a.     For an order certifying the nationwide Class and the Illinois Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For injunctive relief enjoining the illegal acts detailed herein;

f.     For prejudgment interest on all amounts awarded;

g.     For an order of restitution and all other forms of equitable monetary relief;

h.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

18

Dated:  March 31, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     _/s/ Yitzchak Kopel_
          Yitzchak Kopel

Yitzchak Kopel
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
Email: ykopel@bursor.com

**BURSOR & FISHER, P.A.**

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# lluís jané busquets
## laboratori d'anàlisi s.l.

**V.A.T. Id. B61817615**
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

**Lluís Jané Busquets Laboratori d'Analisi S.L.**
c/ St Llorenç, 27 baixos 08192 Sant Quirze del Valles (Bcn)

**BURSOR & FISHER, P.A.**

1330 Avenue of the Americas, 32nd Floor
New York

## Report Nº: 86081

# ANALYSIS CERTIFICATE

### Sample Idenfication

| | | | |
|---|---|---|---|
| Reception date: | 20/02/2026 | Initial date Analysis: | 20/02/2026 |
| Final date analysis: | 27/02/2026 | Issue report date: | 27/02/2026 |
| Sample Nº: | 86081 | | |
| Sample description: | Oil contained in 250ml plastic bottle | | |

**Information provided by the client:**

| | |
|---|---|
| Sample: | EXTRA VIRGIN OLIVE OIL |
| Reference: | F502 |

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|
| **Fatty Acid Composition + Trans Isomers (Quantitative %)** | | | | |
| **Myristic Acid** | 0,04±0,01 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,03 |
| **Palmitic Acid** | 6,05±0,12 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 7,00-20,00 |
| **Palmitoleic Acid** | 0,40 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 0,30-3,50 |
| **Heptadecanoic Acid** | 0,07 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,40 |
| **Heptadecenoic Acid** | 0,10 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,60 |
| **Stearic Acid** | 2,35 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 0,50-5,00 |
| **Oleic Acid** | 67,17 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 55,00-85,00 |
| **Linoleic Acid** | 15,72 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | 2,50-21,00 |
| **Arachidic Acid** | 0,61±0,04 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,60 |
| **Linolenic Acid** | 5,88±0,47 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=1,00 |
| **Eicosenoic Acid** | 1,11±0,14 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,50 |
| **Behenic Acid** | 0,31±0,03 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,20 |
| **Lignoceric Acid** | 0,15 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,20 |
| **Oleic Trans Isomers** | 0,21±0,05 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,05 |
| **Linoleic and Linolenic Trans isomers** | 0,36±0,13 % | COI T.20 DOC nº33 Rev. 1 | GC-FID | <=0,05 |

Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.

Registro Mercantil de Barcelona Tomo 31582 - Folio 73 Hoja B194757 - Inscripción 1ª C.I.F. B-61817615



lluís jané busquets
laboratori d'anàlisi s.l.





The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

V.A.T. Id. B61817615
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

**Report Nº: 86081**

# ANALYSIS CERTIFICATE

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|
| **Sterol Composition+Total Sterol+ E+U** | | | | |
| **Cholesterol** | 0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,5 |
| **Brassicasterol** | 8,2±0,3 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,1 |
| **24-Methylenecholesterol** | 0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Campesterol** | 32,1±1,3 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=4,0 |
| **Campestanol** | 0,1 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Stigmasterol** | 0,3 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <Campesterol |
| **Delta7-Campesterol** | 0,8 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Beta-sitosterol (apparent)** | <80,0 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | >=93,0 |
| **Delta-7-Stigmastenol** | 0,4 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=0,5 |
| **Delta-7-Avenasterol** | 0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | |
| **Total Sterol** | >3800 mg/kg | COI T.20 DOC nº26 Rev. 5 | GC-FID | >=1.000 |
| **Erythrodiol+Uvaol** | 0,2 % | COI T.20 DOC nº26 Rev. 5 | GC-FID | <=4,5 |

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|
| **Difference:ECN42(HPLC)and ECN42(theoretical)** | 0,64±0,21 % | COI T.20 DOC nº20 Rev. 4 | GC-FID & HPLC-RI | <=I0,20I |
| **Stigmasta-3,5-diene** | >4,0 mg/kg | COI T.20 DOC nº11 Rev. 4 | GC-FID | <=0,05 |
| **Wax Content (C42+C44+C46)** | 69 mg/kg | COI T.20 DOC. nº28 Rev. 4 | GC-FID | <=150 |
| **2-Glyceryl monopalmitate** | <0,4 % | COI T.20 DOC nº23 Rev. 1 | GC-FID | <=0,9 |

## LEGISLATION

International Olive Council Trade Standard for Olive Oils and Olive Pomace Oils COI/T.15/NC No. 3 Rev. 21

## Notes

*The numerical value of the stigmasta-3,5-diene is 165,7 mg/kg.
*The numerical value of the Total Sterol content is 5056 mg/kg.

Technical Manager,
Anna Jané.

Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.

 lluís jané busquets
laboratori d'anàlisi s.l.



The analytical determinations and activities marked with a (*) are not included in the Enac accreditation scope.

Recognized by the Olive Oil Council International for analysis physical-chemical (01/12/25-30/11/26)

V.A.T. Id. B61817615
tel - fax 937211325
ljb@ljblab.com
www.ljblab.com

**Report Nº: 86081**

# ANALYSIS CERTIFICATE

| Determinations | Results | Procedure: | Method | Limit |
|---|---|---|---|---|

| **_Annex_** | | | | |
|---|---|---|---|---|



Registered in Catalonia Agri-Food Laboratories Agriculture, Livestock, Fisheries and Food Department Register as an accredited laboratory in the oils and fats sector.
Registered in Catalonia Environmental Health, Food and Official Control Laboratories as an accredited laboratory with Nº918 / LE1868.

The results of the analyzed physicochemical parameters have not been corrected with recovery factors.
This analytical report corresponds only to the sample received and analyzed provided by the client.
The laboratory is not responsible for the sampling and the information provided by the client. Such information is not covered by accreditation.
The laboratory confidentially manages the information obtained or created during the performance of laboratory activities.
The results are considered the property of the client and must not be reproduced in whole or in partially without the written approval of the laboratory.

Page 3/ 3

